IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ROBIN C. J.,[1]

    Plaintiff,

v.

**ANDREW M. SAUL,** Commissioner of Social Security,

    Defendant.

Case No. 6:20-cv-00183-IM

**OPINION AND ORDER**

Mark A. Manning and Katherine Eitenmiller, Harder, Wells, Baron & Manning, P.C., 474 Willamette Street, Eugene, OR 97401. Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Sarah L. Martin, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**IMMERGUT, Judge**

    Plaintiff, Robin C. J., seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB")

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

and Title XVI, Supplemental Security Income ("SSI"). For the following reasons, this Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on March 23, 1964. AR 534. Plaintiff has a GED and has performed semi-skilled work as a mortgage accounting clerk, credit clerk, and companion in the past. *Id*. Plaintiff protectively filed applications for DIB and SSI on May 2, 2013, alleging disability beginning on January 2, 2013. AR 24, 95. In her application, Plaintiff alleged disability due to migraine headaches, fibromyalgia, and chronic fatigue syndrome. *Id*. The agency denied the claims both initially and upon reconsideration, and Plaintiff requested a hearing. AR 138–54. Plaintiff appeared for a hearing before Administrative Law Judge ("ALJ") Alex S. Karlin on May 12, 2015. AR 40–91. On June 24, 2015, the ALJ issued a decision denying Plaintiff's claims for benefits. AR 21–39. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on December 18, 2015. AR 6–10.

Plaintiff subsequently sought review of the ALJ's unfavorable decision in district court. AR 616-41. United States District Judge Michael H. Simon determined that the ALJ erred in rejecting Plaintiff's subjective symptom testimony and the opinion of Plaintiff's primary care physician, Jotham Lefford, MD, resulting in a flawed and incomplete residual functional capacity ("RCF") determination. AR 621–39. Judge Simon remanded for further administrative proceedings to properly consider "Plaintiff's symptom testimony and Dr. Lefford's opinion, assess Plaintiff's RFC, and consider step four and, if necessary, step five." AR 639–41. Upon remand, the Appeals Council vacated ALJ Karlin's decision and remanded to another ALJ for further proceedings consistent with Judge Simon's order. AR 645.

Plaintiff appeared for a remand hearing before ALJ Mark Triplett on July 9, 2018. AR 544–91. The ALJ held the record open after the hearing and referred Plaintiff to Paula Belcher, PhD, for a consultative psychological assessment. AR 587–90, 518, 778. The ALJ proffered the

PAGE 3 – OPINION AND ORDER

resulting report, and in response, Plaintiff's hearing representative requested that the ALJ order a neuropsychological examination with formal testing to determine Plaintiff's cognitive functioning. AR 778. The ALJ granted that request; referred Plaintiff to Lois Michaud, PhD; proffered the resulting report; and advised that Plaintiff had a right to request a supplemental hearing. AR 779–82. Plaintiff subsequently requested a supplemental hearing to ask additional questions of a vocational expert regarding the limitations documented in Dr. Michaud's report. AR 782. ALJ Triplett denied that request in an unfavorable decision dated February 27, 2019. Tr. 523, 536. The Appeals Council declined to assume jurisdiction, making the ALJ's decision the final decision of the Commissioner. AR 506-11. Plaintiff then filed this action seeking judicial review of the Commissioner's decision.

**B. The Sequential Analysis**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

> 1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

PAGE 4 – OPINION AND ORDER

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. AR 520.

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 2, 2013, her alleged onset date. AR 521.

At step two, the ALJ found the following severe, medically determinable impairments: fibromyalgia, chronic fatigue syndrome, migraines, and degenerative disc disease. AR 521.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 525. Instead, the ALJ found that Plaintiff had an RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: [Plaintiff] requires the ability to alternate between sitting and standing at will while remaining on task." AR 526.

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a mortgage accounting clerk and credit clerk. AR 534. The ALJ made the alternative

PAGE 6 – OPINION AND ORDER

finding at step five that Plaintiff retained the ability to perform the requirements of jobs existing in significant numbers in the national economy, such as ticket taker, cashier II, and photocopy machine operator. AR 535. As a result, the ALJ found Plaintiff not disabled. AR 536.

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ that she was not disabled. Plaintiff first argues that the ALJ erred in failing to identify specific and legitimate reasons supported by substantial evidence in the record to reject the medical opinions of Jotham Lefford, MD, and Lois Michaud, PhD, and that the rejected evidence should be fully credited as true. ECF 13 at 10–24. She then argues that the ALJ erred in failing to identify specific, clear, and convincing reasons supported by substantial evidence in the record to reject Plaintiff's subjective symptom testimony, and that the rejected evidence should be fully credited as true. *Id*. at 25–29. Each argument will be addressed in turn.

**A. Evaluation of Medical and Other Opinion Evidence[2]**

    **1. Legal Standards**

An ALJ must consider, evaluate, and explain the weight given to the opinions of medical professionals and others who saw the claimant or reviewed her records in a professional capacity. 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 416.927(b), (c), (d) & (e); SSR 06-03p, *available at* 2006 WL 2329939. Plaintiff contends that the ALJ erred in evaluating the opinions of Dr. Lefford and Dr. Michaud. ECF 13 at 10–24.

---

[2] Newly promulgated regulations changed how an ALJ must weigh medical opinion evidence for claims filed on or after March 27, 2017. Revisions to Rules the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed on May 2, 2013, the new regulations do not apply to her case.

For claims filed before March 27, 2017, the Ninth Circuit distinguishes between three types of medical opinions: those from treating sources, examining sources, and non-examining sources. The opinions of treating physicians are generally accorded greater weight than those of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's report that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide only "specific, legitimate reasons" for discrediting the treating physician's opinion. *Id.*; *see also Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). An ALJ can comply with this mandate by providing a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Id.* at 1040.

2. Analysis

    a. Jotham Lefford, M.D. – Treating Physician

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Lefford, Plaintiff's treating physician. ECF 13 at 11–19. The record includes two medical source statements prepared by Dr. Lefford, one from March 2015, and another from July 2018. AR 469–74, 1024–28; ECF 13 at 11-12. In March 2015, Dr. Lefford opined that Plaintiff could not perform even sedentary work on a fulltime basis, could not sit or stand for over fifteen minutes at a time, needed to shift between sitting and standing at will, and would be absent about once a month.

AR 469–71. In July 2018, Dr. Lefford opined that Plaintiff could only reach or manipulate objects five percent of the time, could not stand or walk more than five minutes at a time or more than an hour per workday, could not sit even an hour per workday, and would have many absences per month. AR 1024–28. Because both of Dr. Lefford's opinions are contradicted by other medical opinions in the record, the ALJ could properly discount Dr. Lefford's opinion by offering specific, legitimate reasons. AR 101, 118–22, 1034–35; *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Here, the ALJ gave specific, legitimate reasons for discounting both of Dr. Lefford's opinions.

    First, the ALJ properly discounted Dr. Lefford's March 2015 opinion after finding that it was unsupported by his own treatment records. AR 529–34. An ALJ may properly discount a medical opinion when it is unsupported by the provider's treatment notes. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). The ALJ noted that Plaintiff's treatment with Dr. Lefford prior to March 2015 did not contain any apparent subjective reports or medical evidence of active fibromyalgia, even though Dr. Lefford put fibromyalgia as Plaintiff's primary impairment in his opinion. AR 416–18, 465–68, 469, 529–30. Dr. Lefford's examinations through May 2015 did not contain any apparent positive examination findings for fibromyalgia or migraines. AR 416–18, 442–44, 465–68, 530. Through May 2015, Dr. Lefford's only positive chronic impairment finding was moderately limited range of motion in Plaintiff's cervical spine. AR 486. As expressed by the ALJ, these treatment records provide an inadequate basis for Dr. Lefford's opinion of substantial limitations in March 2015. AR 530, 533. Thus, the ALJ provided a specific, legitimate reason for discounting Dr. Lefford's March 2015 opinion by pointing to the lack of support in the treatment records.

Second, the ALJ properly provided specific, legitimate reasons for giving only limited weight to Dr. Lefford's July 2018 opinion that Plaintiff could only reach or manipulate objects five percent of the time, could not stand or walk more than five minutes at a time or more than an hour per workday, could not sit even an hour per workday, and would have many absences per month. Specifically, the ALJ found that Dr. Lefford's 2018 opinion was inconsistent with (1) his treatment records and examination findings; (2) Plaintiff's course of treatment and overall findings of improvement; (3) Plaintiff's activity level; and (4) Plaintiff's testimony.

The ALJ's finding that Dr. Lefford's 2018 opinion was inconsistent with his treatment records and examination findings is supported by substantial evidence. Discrepancy with a treating source's clinical notes is a sufficient reason for rejecting the source's opinion. *Bayliss v. Barhhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Despite opining that Plaintiff's condition had worsened, particularly in her arms, Dr. Lefford's treatment records after May 2015 noted that Plaintiff's fibromyalgia and other chronic pain complaints were predominantly in her legs, her conditions were "moderate" and "fairly controlled," she was negative for weakness or gait disturbance, and her shoulder symptoms had improved with cortisone injections and physical therapy in 2017. AR 531, 905, 908–09, 915–16, 922, 926, 930, 933, 936, 960, 963. Dr. Lefford attributed certain cognitive and speech difficulties in early 2016 to headache medication he then tapered Plaintiff off of, while finding appropriate affect, normal judgment, and clear and intelligible speech. AR 942, 944–46. After this period, Dr. Lefford's treatment records and examinations do not contain any further references to cognitive or psychological difficulties, with minimal references to migraine headaches. AR 531; *see, e.g.*, 905–40. Dr. Lefford's records also included findings of normal motor and sensory functioning, moderately reduced to normal spinal range of motion, and normal shoulder range of motion despite some tenderness that arose

in 2017. AR 531, 906, 912, 916, 919–20, 923, 927, 931, 934, 936, 940, 951, 954, 957, 960, 963. On this record, the ALJ reasonably concluded that Dr. Lefford's extreme assessment of Plaintiff's limitations was inconsistent with his treatment records. AR 530–31.

The ALJ's finding that Dr. Lefford's 2018 opinion was inconsistent with Plaintiff's course of treatment and overall findings of improvement is also supported by substantial evidence. AR 533-34. An ALJ may discount treating source opinions that are unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. Where evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch*, 400 F.3d at 679. Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193, 1196. While Plaintiff presents an alternative interpretation of the record, the ALJ's finding that Dr. Lefford's opinion was inconsistent with evidence of Plaintiff's improvement was reasonable. For example, when Plaintiff reported a five-day-long migraine headache in April 2015, she also reported that she did not usually seek medical attention for her headaches. AR 497. Plaintiff nonetheless had an unremarkable examination despite her complaints of extreme pain and was then "much improved" with treatment. AR 497–98, 530. Other treatment cited by the ALJ indicated Plaintiff's migraines resolved or significantly improved with treatment. AR 531, 832, 840, 848, 864–65. Plaintiff cites positive findings of spinal tenderness and joint pain in 2017 as support for Dr. Lefford's opinions but omits that these examinations also found full or nearly full range of motion, negative straight leg raising, full strength, normal sensation, and normal reflexes. ECF 13 at 16; AR 532, 784–85, 789–90. Plaintiff then experienced "marked improvement" in her neck and arm symptoms with physical therapy, along with some improvement in lower back

pain. AR 531–32, 795, 799, 809-10, 811, 814, 816. Thus, the ALJ's finding that Dr. Lefford's opinion was inconsistent with Plaintiff's examination findings and evidence of improvement with conservative treatment was supported by substantial evidence.

The ALJ's conclusion that Dr. Lefford's 2018 opinion was inconsistent with Plaintiff's activity level was also based on a rational reading of the record. A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting it. *Ford*, 950 F.3d at 1155. Here, the ALJ noted how Plaintiff reported working for multiple hours on home maintenance repair in a manner incompatible with Dr. Lefford's opinion that she could only use her arms five percent of the time. AR 533, 578, 789, 1027. This inconsistency was also a specific, legitimate reason to give limited weight to Dr. Lefford's opinion.

Finally, the ALJ's finding that Dr. Lefford's 2018 opinion was inconsistent with Plaintiff's own testimony was supported by substantial evidence. AR 534. Conflict with a claimant's testimony is a permissible reason for discounting a medical opinion. *Morgan v. Comm'r Soc. Sec.*, 169 F.3d 595, 603 (9th Cir. 1999). Plaintiff testified in 2018 that her headaches had improved. AR 572, 590. She described performing domestic activities in a manner notably different from her testimony in 2015. AR 48–49, 91 (2015 testimony); 528 (ALJ decision); 576–79, 590 (2018 testimony). As noted by the ALJ, this reporting contrasted with Dr. Lefford's opinion that Plaintiff's symptoms worsened during that time, such as his assertion that chronic fatigue and headaches several times a week prevented sustained activity. AR 530, 534, 1025–26. This inconsistency between Dr. Lefford's opinion and Plaintiff's testimony provided another specific, legitimate reason to discount the opinion.

Thus, the ALJ offered specific, legitimate reasons for discounting Dr. Lefford's opinions and substantial evidence supports the finding.

### b. Lois Michaud, PhD – Examining Psychologist

Plaintiff further challenges the ALJ's decision to afford "less weight" to the opinion of Dr. Michaud. ECF 13 at 19–24. Dr. Michaud's opinion was based on materials provided by the ALJ, including a January 2018 chart note, a lay witness report from Plaintiff's mother, and an August 2018 psychological assessment. AR 1042. Dr. Michaud also administered a clinical interview, mental status examination, and psychometric tests on Plaintiff. AR 1042, 1051–52. Dr. Michaud opined that Plaintiff had mild to moderate limits with complex instructions and decisions, as well as moderate to marked limits in social interactions. AR 1039–40, 1060. The ALJ found Dr. Michaud's opinion to be inconsistent with the record as a whole. AR 523.

First, the ALJ found Dr. Michaud's opinion to be inconsistent with Plaintiff's own subjective disability allegations. An ALJ may properly consider consistency with the record as a whole in determining the weight given to any medical opinion. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Conflict with a claimant's testimony is a permissible reason for discounting a medical opinion, particularly where an examining psychologist's opinions and findings conflict with self-reports elsewhere in the record. *See Morgan*, 169 F.3d at 602–03. Plaintiff did not report issues with anxiety or limits in her social functioning when she testified in 2015 and 2018, AR 47–85, 523, 551–80, nor did she allege those symptoms in her disability reports to the agency. AR 243, 255, 264–66, 523. Plaintiff did assert that she was at times foggy and forgetful, but this was not attributed to anxiety. AR 49 ("I think from not sleeping I get too foggy."), 556–59 (suggesting a stroke-like occurrence caused forgetfulness). Plaintiff continued to be capable of driving and performing domestic activities, which she only alleged to be limited by pain. AR

523, 552, 576–78. When Plaintiff saw examining psychologist Dr. Belcher in August 2018, she "reported getting along well with coworkers and the public," with panic attacks that occurred "once every few months for the past [two] years." AR 1030–32; *see also* AR 523. However, when Plaintiff saw Dr. Michaud a few months later, Plaintiff reported that she sometimes fled public settings due to anxiety, that she experienced panic attacks once a week on average, and that her panic attacks had been ongoing since age twenty-four. AR 523, 1048–49. Contrary to her hearing testimony, Plaintiff now made references to anxiety limiting her ability to drive. AR 523, 1049–50. Noting the inconsistencies in self-reporting, the ALJ reasonably afforded Dr. Michaud's opinion, which was expressly based in part on Plaintiff's statements about the effects of heightened anxiety and panic attacks, less weight. AR 1040.

The ALJ also noted that Plaintiff appeared to misrepresent whether her symptoms were well controlled to Dr. Michaud. AR 523. While psychological evidence might be variable, evidence of improvement is an appropriate basis for discounting an opinion when the evidence is open to interpretation. *Cf. Ford*, 950 F.3d at 1156. In June 2015, Plaintiff was prescribed medication as needed for anxiety. AR 521, 962–63. Although Plaintiff told Dr. Michaud that poor control over panic attacks compromised her driving and shopping, she told treatment providers that she improved with anti-anxiety medication. AR 521–22, 889, 957. For example, Plaintiff presented with normal mood and affect during a counseling intake session in early 2016, during which she said her panic attacks were under control most of the time. Plaintiff displayed slow but logical speech that improved as her interview progressed and exhibited friendly and pleasant behavior. AR 522, 970. During a follow-up session, Plaintiff spoke with "more ease" and declined to schedule another session until "the need arises." AR 521–23, 967–68. Plaintiff made no other apparent attempts to seek counseling. Plaintiff also told a consulting physician in

January 2018 that she was only using her anti-anxiety medication about once a month while also caring for her elderly parents. AR 522–23, 889. This record evidence is inconsistent with Plaintiff's allegation that her limited psychiatric medication use was due to self-isolation and provides substantial evidence to support the ALJ's conclusion that sustained psychological improvement undermined Dr. Michaud's opinion.

The inconsistencies identified by the ALJ provided specific, legitimate reasons for affording Dr. Michaud's opinion less weight. Accordingly, this finding is supported by substantial evidence.

**B. Evaluation of Plaintiff's Subjective Symptom Allegations**

Plaintiff next claims the ALJ erred by failing to give specific, clear, and convincing reasons for her decision to discount Plaintiff's subjective symptom testimony. ECF 13 at 25–29. This Court disagrees.

**1. Legal Standards**

There is a two-step process used in the Ninth Circuit for evaluating a claimant's testimony about the severity and effect of the claimant's symptoms. *Vasquez. v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (citations omitted).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (citation omitted). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. However, the ALJ may not reject testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883 (citations omitted).

**2. Analysis**

The ALJ, applying the first step of the credibility framework, found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." AR 527. In applying the second step of the required analysis, however, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*.

In assessing Plaintiff's symptom testimony, the ALJ noted how Plaintiff's impairment history did not correspond with her testimony. AR 527–29. A claimant's ability to work for a

continued period despite a longstanding impairment may be substantial evidence that it is not disabling. *Morgan*, 169 F.3d at 601; *Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988). The ALJ accurately described how Plaintiff's records documented a long history of headaches, fibromyalgia, and widespread chronic pain complaints, AR 286–87, 353–54, 370–71, 529, which had corresponded with sustained gainful employment as a caregiver until mid-2012. AR 214, 224–27 (caregiver work ending August 31, 2012), 286–87, 423, 529. These chronic impairments do not appear to have worsened after Plaintiff's alleged onset date. Indeed, the record shows that Plaintiff responded well to recommended changes in treatment.

      An ALJ may also use evidence of improvement with treatment to discount a claimant's contrary testimony. *Morgan*, 169 F.3d at 599. Plaintiff left her employment in mid-2012 while experiencing significant withdrawal symptoms during changes in chronic opiate therapy. AR 286–87, 328–29, 351–52, 354, 521, 529. Plaintiff continued taking opiates into the relevant period despite repeated instructions to wean off this medication in order to improve her migraines, fibromyalgia, and chronic pain. AR 289–97, 308, 311, 319, 322, 327, 412, 529. When Plaintiff eventually made those recommended changes, she reported improvement in her longstanding symptoms. AR 529–31, 787, 789–90, 795, 799, 805, 908–09, 915–16, 922, 930, 933, 936. Thus, the ALJ appropriately considered Plaintiff's work and treatment history in discounting her testimony that her chronic impairments had worsened to the point that Plaintiff needed caretaking. AR 48–49, 57, 81-82, 529–31.

      While Plaintiff's brief summarizes her subjective complaints that worsening impairments and ineffective treatment caused her to leave her employment, it does not contradict the ALJ's finding that she previously worked with chronic impairments and that her chronic impairments improved with treatment. ECF 13 at 25–29; AR 529–31. Plaintiff's work history and record

evidence that her chronic conditions improved with treatment were clear and convincing reasons for the ALJ to discount her testimony to the contrary.

The ALJ also found that Plaintiff's mostly normal examination results during her treatment further contradicted her testimony. While an ALJ may not reject subjective symptom testimony solely due to a lack of objective medical evidence, such objective evidence is a useful indication as to the intensity and persistence of alleged symptoms. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). A claimant's course of treatment is also a relevant factor for an ALJ to consider in weighing symptom testimony. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Here, even when Plaintiff was taking little or no medication before starting physical therapy, she displayed full strength, normal sensation, normal reflexes, and mostly normal range of motion in her spine and extremities. AR 425–29, 497–98, 502–503, 529–31, 784–85, 831–32. Plaintiff reported decreased pain with physical therapy and chiropractic adjustments and continued to exhibit normal range of motion and unimpaired strength. AR 531–32, 787, 789–90, 811, 891, 908. Plaintiff was also noted to have "marked improvement" with widespread pain symptoms and arm numbness, along with improvement with lower back pain. AR 531, 795, 799, 809, 811, 813–14, 816. When discharged from physical therapy, Plaintiff had met all goals for her arms, with "resolved" arm symptoms. AR 795. The ALJ's finding that examination findings of symptom control and improvement in the record undermined Plaintiff's testimony is supported by substantial evidence.

The ALJ also noted that Plaintiff's activity level contradicted her testimony of severe limitations. AR 528, 531–33. A claimant's daily activity levels are a relevant factor an ALJ should consider. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). When Plaintiff started physical therapy, she reported the capacity for moderate yardwork and grounds maintenance, including

sweeping. AR 532, 815. Plaintiff also described moving pallets, mowing her property, and walking up to 2.5 miles. AR 521–32, 795, 797. Plaintiff further reported engaging in home appliance repair for long periods, caring for goats on her parents' property, caring for herself and her parents' property when they were away, and otherwise being a caretaker for her elderly parents. AR 528, 532–33, 576–78, 788–89, 889. This level of activity was inconsistent with Plaintiff's testimony of severe fatigue and only being able to stand for a few minutes at a time, being unable to shower more than once a week, and needing assistance with meal preparation. AR 48–49, 552.

Therefore, the ALJ's decision to discount Plaintiff's subjective symptom testimony due to inconsistencies between the testimony and record evidence of Plaintiff's work history, responsiveness to treatment, objective medical evidence, and activity levels was supported by substantial evidence.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 12th day of May, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge